O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRIS BOGIANTZIS,<br><br>Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 2:16-CV-00241 (VEB)<br><br>DECISION AND ORDER |

## I. INTRODUCTION

In December of 2012, Plaintiff Dimitris Bogiantzis applied for Disability Insurance Benefits under the Social Security Act. The Commissioner of Social Security denied the application. Plaintiff, represented by Jerry Persky, Esq.,

1

commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8, 10). On October 5, 2016, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 18).

## II. BACKGROUND

Plaintiff applied for benefits on December 11, 2012, alleging disability beginning October 23, 2010, due to several impairments. (T at 85).[1] The application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On February 14, 2014, a hearing was held before ALJ Richard A. Urbin. (T at 41). Plaintiff appeared with his attorney and testified. (T at 44-77). The ALJ also received testimony from Kenneth Ferra, a vocational expert (T at 77-82).

On March 17, 2014, the ALJ issued a written decision denying the application for benefits. (T at 18-40). The ALJ's decision became the Commissioner's final decision on November 18, 2015, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

---

[1] Citations to ("T") refer to the administrative record at Docket No. 16.

On January 12, 2016, Plaintiff, acting by and through his counsel, filed this action seeking judicial review of the Commissioner's decision. (Docket No. 1). The Commissioner interposed an Answer on July 29, 2016. (Docket No. 16).  The parties filed a Joint Stipulation on October 3, 2016. (Docket No. 17).

After reviewing the pleadings, Joint Stipulation, and administrative record, this Court finds that the Commissioner's decision should be reversed and this case remanded for further proceedings.

### III. DISCUSSION

A.     Sequential Evaluation Process

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the

claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is

supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th

Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## C. Commissioner's Decision

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 23, 2010 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2015. (T at 23). The ALJ found that Plaintiff's coronary artery disease with myocardial infarction and obesity were "severe" impairments under the Act. (Tr. 23).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 26).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of light work as defined in 20 CFR § 404.1567 (b), as follows: he can lift/carry 20 pounds occasionally and 10 pounds frequently;

he can stand, walk, and sit without restriction; and perform simple, repetitive tasks. (T at 28).

The ALJ found that Plaintiff could not perform his past relevant work in the entertainment industry. (T at 34). Considering Plaintiff's age (50 on the alleged onset date), education (at least high school), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 35).

As such, the ALJ found that Plaintiff was not entitled to benefits under the Social Security Act from October 23, 2010 (the alleged onset date) through March 17, 2014 (the date of the ALJ's decision). (T at 36). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

### IV. ANALYSIS

Plaintiff challenges the ALJ's consideration of medical opinion evidence with respect to his mental health impairments and cardiac condition.

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-examining physician. *Benecke v. Barnhart*,

379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors,' are correct." *Id*.

**A.    Mental Health Impairments**

An emergency room record from October of 2011 reports Plaintiff as having a diagnosis of anxiety disorder. (T at 885). However, Plaintiff did not mention any mental impairment when he completed his Disability Report in December 2012. (T at 25-26).

In September of 2013, Plaintiff told Dr. Tan, his primary care physician, that his wife was concerned because he had been suffering from anxiety or posttraumatic stress disorder since his 2010 heart attack. (T at 799).

In a treatment note from October of 2013, Dr. Cynthia Thaik described Plaintiff as "extremely stressed over his life" and unable to "stop thinking about his past heart attac[k] and … afraid that he will have another one." (T at 831). Plaintiff was reported to have received emergency room treatment for chest pains on several occasions, but had not been diagnosed with a heart attack. (T at 831). He was advised to consider meditation, attend life coach sessions, and speak with a psychologist to gain "further insight into his high levels of stress." (T at 831-32).

Plaintiff began treating with Dr. Mark Imhoff, a psychologist, in October of 2013. Plaintiff reported an inability to handle stress and fear of dying. Dr. Imhoff indicated a diagnosis of post-traumatic stress disorder. (T at 922). In February of 2014, Dr. Imhoff completed a mental medical source statement. He explained that he had been treating Plaintiff weekly for 45 minutes at a time since October of 2013. (T at 910). Dr. Imhoff diagnosed generalized anxiety disorder and assigned a Global Assessment of Functioning ("GAF") score[2] of 45 (T at 910), which is indicative of

---

[2] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

serious impairment in social, occupational or school functioning. *Haly v. Astrue,* No. EDCV 08-0672, 2009 U.S. Dist. LEXIS 76881, at *12-13 (Cal. CD Aug. 27, 2009). Dr. Imhoff described Plaintiff's prognosis as "guarded" and described the following clinical findings: chronic anxiety/fear, difficulty in relationships, an inability to work, symptoms of depression and insomnia, and traumatic recovery from heart attack. (T at 910).

Dr. Imhoff opined that Plaintiff either could not meet competitive standards or had no useful ability to function with regard to numerous work-related activities, including understanding and remembering very short and simple instructions, making simple work-related decisions, and dealing with normal work stress. (T at 912). According to Dr. Imhoff, Plaintiff's chronic fear and anxiety produced "distractibility, inability to focus and concentrate," and a "tendency to allow intrusive thoughts." (T at 912). Plaintiff's emotional issues impaired his memory, decision-making, and interpersonal functioning. (T at 912-13). Dr. Imhoff expected Plaintiff to miss work more than four times per month due to his impairments or treatments. (T at 914). Dr. Imhoff opined that Plaintiff's impairments could be expected to last at least 12 months and described Plaintiff's impairments, as demonstrated by signs, clinical findings, or test results, as consistent with the limitations he assessed. (T at 914).

The ALJ afforded "little weight" to Dr. Imhoff's assessment (T at 34) and concluded that Plaintiff did not have any medically determinable mental health impairments. (T at 26). The ALJ's decision was flawed and must be revisited on remand.

The ALJ emphasized the fact that Plaintiff reported anxiety in October of 2011, but did not seek treatment until September of 2013. (T at 26). The ALJ does not appear to have considered the fact that Plaintiff lacked insight and understanding with regard to his mental health symptoms.

This was error under SSR 96-7p. Under that ruling, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.; see also Dean v. Astrue*, No. CV-08-3042, 2009 U.S. Dist. LEXIS 62789, at *14-15 (E.D. Wash. July 22, 2009)(noting that "the SSR regulations direct the ALJ to question a claimant at the administrative hearing to determine whether there are good reasons for not pursuing medical treatment in a consistent manner").

An ALJ's duty to develop the record in this regard is significant because there are valid reasons why a claimant might not seek treatment. For example, "financial

concerns [might] prevent the claimant from seeking treatment [or] . . . . the claimant [may] structure[] his daily activities so as to minimize symptoms to a tolerable level or eliminate them entirely." *Id.* Further, as a general matter, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

Here, it appears Plaintiff sought mental health treatment shortly after a health care provider (Dr. Thaik) recommended it. It further appears that Plaintiff's wife was concerned about the symptoms well before Plaintiff gained insight into the fact that he might be suffering from a mental impairment(s) as an aftereffect of his cardiac issues. The ALJ does not appear to have accounted for this possible explanation for the gap in treatment, which was an error.

In addition, the ALJ's consideration of Dr. Imhoff's assessment was inadequate. The ALJ found that Dr. Imhoff had "apparently" relied on Plaintiff's subjective complaints, which the ALJ found to be not fully credible. (T at 34). However, Dr. Imhoff had an extended treating relationship with Plaintiff (weekly 45 minute sessions for several months) and explained that his conclusions were based on and/or consistent with signs, clinical findings, and/or test results. (T at 914).

Thus, the ALJ's conclusion that Dr. Imhoff's findings were "apparently" based only on subjective complaints is contradicted by Dr. Imhoff's own words.

Under the circumstances, the ALJ was obliged to further develop the record by re-contacting Dr. Imhoff and/or seeking a consultative psychiatric examination. *See* SSR 96-5p ("[I]f the evidence does not support a treating source's opinion . . . and the [ALJ] cannot ascertain the basis of the opinion from the case record, the [ALJ] must make every reasonable effort to re-contact the source for clarification of the reasons for the opinion."). While a treating physician's opinion may be rejected if it is inadequately supported, the physician should be re-contacted where, as here, the evidence of disability is ambiguous. *See Estrada v. Astrue*, No EDCV 07-01226, 2009 U.S. Dist. LEXIS 15824, at *11 (C.D. Cal. Feb. 25, 2009).

Moreover, "when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). Indeed, "a patient's complaints or reports of [her] complaints, or history, is an essential diagnostic tool." *Williams v. Colvin*, 13-03005, 2014 U.S. Dist. LEXIS 6244, at *33 (E.D.Wa. Jan. 15, 2004).

Lastly, even if there was an arguable reason for declining to accept every aspect of Dr. Imhoff's very restrictive assessment, the ALJ's conclusion that

1  Plaintiff did not have any medically determinable mental impairments cannot be
2  sustained in the face of Dr. Imhoff's treatment records and treating provider opinion.
3  A remand is accordingly required.

4  **B.     Cardiac Condition**

5  In May of 2012, Dr. Cynthia Thaik, Plaintiff's treating cardiologist, opined
6  that he was limited to "no repetitive lifting, pushing, [or] pulling of greater than 20
7  lbs, no single lifting of greater than 50 lbs" and needed to refrain from "high
8  strenuous physical activity." (T at 291).

9  In February of 2014. Dr. Thaik completed a cardiac medical source statement.
10  She noted that she had seen Plaintiff every 3-6 months since 2011. (T at 923).  She
11  explained that stress exacerbated Plaintiff's symptoms and opined that he could not
12  tolerate even "low stress" work. (T at 924).  Dr. Thaik reported that Plaintiff could
13  sit/stand/walk for less than 2 hours in an 8-hour workday, would need to shift at will
14  from sitting, standing, or walking, and would need to take frequent unscheduled
15  breaks. (T at 924).  She opined that Plaintiff could rarely lift 20 pounds, occasionally
16  twist, rarely stoop or crouch, and never climb stairs or ladders. (T at 925).  Dr. Thaik
17  explained that Plaintiff's symptoms would render him "off task" 25% or more of
18  every work day and estimated that he would miss more than 4 days of work per
19  month due to his impairments or treatment. (T at 926).

20

The ALJ found Dr. Thaik's May 2012 assessment well supported and incorporated its findings into the RFC determination. (T at 33). The ALJ afforded less weight to the February 2014 assessment. (T at 33). For the following reasons, this Court finds the ALJ's decision supported by substantial evidence.

First, Dr. Thaik's February 2014 report is a conclusory, "checkbox" form, without meaningful explanation in support of the findings. The ALJ is not obliged to accept a treating source opinion that is "brief, conclusory and inadequately supported by clinical findings." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1044-45 (9th Cir. 2007) (citing *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)).

Second, treatment notes from shortly before Dr. Thaik's February 2014 report indicated that Plaintiff denied chest pain, described Plaintiff as "[a]symptomatic," and reported that his hypertension was "[r]easonably well controlled." (T at 832, 878-79). *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)(finding that "discrepancy" between treatment notes and opinion was "a clear and convincing reason for not relying on the doctor's opinion regarding" the claimant's limitations). Moreover, in November of 2011, Dr. Tran, a primary care physician, advised Plaintiff that he might not be able to perform his past work, but "may be able to do a different line of work that would not require so much demand on the physical labor side." (T at 810).

In light of the foregoing, this Court finds no error with regard to this aspect of the ALJ's decision. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)(holding that if evidence reasonably supports the Commissioner's decision, the reviewing court must uphold the decision and may not substitute its own judgment).

**C.   Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand the matter for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Here, this Court finds that remand for further proceedings is the appropriate remedy. As outlined above, the ALJ's conclusion that Plaintiff had no medically determinable mental impairments is not consistent with the evidence.  In addition, the ALJ's consideration of Dr. Imhoff's opinion was flawed for the reasons stated above.  The ALJ was bound to give more careful consideration and develop the record by re-contacting Dr. Imhoff and/or seeking a consultative psychiatric opinion. With that said, it is not clear that Plaintiff's possible anxiety disorder and PTSD, while limiting to some degree, are so limiting that he is disabled within the meaning

of the Social Security Act. As such, a remand for further proceedings is the appropriate remedy. *See Strauss v. Comm'r of Soc. Sec.*, 635 F.3d 1135, 1138 (9th Cir. 2011)("Ultimately, a claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.").

## V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision; and

This matter is REMANDED for further proceedings consistent with this Decision and Order; and

The Clerk of the Court shall file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case, without prejudice to a timely application for attorneys' fees.

DATED this 21st day of November, 2016,

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE